[No. 5308. Decided March 8, 1905.]

JACOB FURTH, *Respondent*, v. TOWN OF WEST SEATTLE *et al., Appellants*.[1]

MUNICIPAL CORPORATIONS — STREET RAILWAYS — FRANCHISES — FORFEITURE—EXCUSE FOR FAILURE OF CONTRACTOR—ACCIDENT OR INABILITY TO OBTAIN MATERIAL. Where a street railway franchise provided for a forfeiture of security unless "in case of . . . accident . . . inability to obtain material . . ." etc., it would seem that it was not a sufficient excuse to fail to construct

[1]Reported in 79 Pac. 936.

the line, that the requirement of the United States government
for costly drawbridges across public waterways for a connecting
line was prohibitory of the enterprise.

SAME—FORFEITURE OF DEPOSIT—WRONGFUL APPROPRIATIONS—
REMEDY—MINGLING WITH GENERAL FUND—TRUSTS—INJUNCTION.
Where a certified check is deposited with a town clerk to be for-
feited upon failure to comply with a street railway franchise,
and, at the expiration of the time limited, the forfeiture is de-
clared by the town council, and the check cashed and its pro-
ceeds mingled with the general funds of the town, without fraud
on the part of the town, the proceeds are not held in trust nor
can equity interfere, and injunction will not lie to prevent the
amount from being drawn out of the general fund, the remedy for
appropriating the check without right being an action at law.

Appeal from an order of the superior court for King
county, Bell, J., entered June 2, 1904, after a hearing upon
plaintiff's motion, granting a temporary injunction. Re-
versed.

*Herbert N. DeWolfe* and *Bogle & Richardson,* for ap-
pellants.

*Piles, Donworth & Howe,* for respondent, contended,
among other things, that it was optional with the plaintiff
to follow the fund as a trust or to sue for the same at law.
*Breit v. Yeaton,* 101 Ill. 242; 2 Story, Equity Jurisp.
(12th ed.), § 1262; *Hodges v. Bullock,* 15 R. I. 592, 10
Atl. 643; *Libby v. Hopkins,* 104 U. S. 303; *Kimmel v.
Dickson,* 5 S. D. 221, 58 N. W. 561, 49 Am. St. 869.

PER CURIAM.—On the 3d of March, 1903, the town
council of the town of West Seattle, a municipal corpora-
tion of the fourth class, passed an ordinance granting to
Jacob Furth, his successors and assigns, a franchise to
construct and maintain street railways in the town of West
Seattle, which ordinance was approved by the council, and
published as required by law.   By section 8 of this ordi-
nance, the grantee was required to construct and begin to
operate, within one year, at least one single track railway

on what is designated as route No. 1, and certain parts of other routes. The ordinance required the grantee to file his written acceptance of the rights, privileges, and franchises thereby granted, within thirty days thereafter; and further provided as follows:

"At the time of filing the written acceptance above provided for, said grantee, his successors or assigns, shall also file in the office of the town clerk a certified check, payable to the town of West Seattle, for the sum of $2,000, as security, which check shall be forfeited to said town if said grantee, his successors or assigns, shall fail to comply with those provisions of section 8 hereof requiring the construction and beginning of operation of certain track within one year, unless said grantee, his successors or assigns, shall be entitled to further time as provided in section 12 hereof; and in case said grantee, his successors or assigns, shall comply with so much of said section 8 as requires the construction and beginning of operation of said track within one year, either within said one year, or within such further time as said grantee, his successors or assigns, shall be entitled to, as provided in section 12, hereof, then said certified check shall be returned to said grantee, his successors or assigns."

The following is the provision of section 12:

"In case said grantee, his successors or assigns, shall be prevented from doing any act or thing in this ordinance required to be done, by any suit or action in court, by any accident, act of God, inability to obtain material, act of town or of the public enemy, or by any strike or strikes, or by any mob violence, then the time within which such act or thing is herein required to be done shall thereby be extended by a length of time equal to the period during which any such interfering cause or causes shall hinder, or delay said grantee, his successors or assigns."

The respondent filed his written acceptance of the franchise and rights granted by this ordinance, on the second day of April, 1903, and delivered to the town clerk a certified check for $2,000, payable to the town of West Seattle.

The railway was not constructed according to the provisions of the ordinance within twelve months from the grant of such franchise, nor was such construction commenced. On February 2, the grantee applied to the town council for an extension of the time within which to construct such line, but such extension was not granted. On the 5th day of March the council of the town of West Seattle passed an ordinance, reciting, in effect, that the grantee, Jacob Furth, had wholly failed, refused, and neglected to comply with the terms of the ordinance, and it was resolved that the town clerk be directed to deposit the $2,000 certified check with the town treasurer, on the 6th day of March, 1904, and that the town treasurer be directed to deposit said certified check to the credit of the general fund of the town of West Seattle.

In accordance with such ordinance and resolution, the clerk turned over the check to the town treasurer on March 6, 1904, the treasurer collected the check, and the proceeds were commingled with the general funds in the hands of the town. At the time of this collection, the treasurer had a general balance of $741.35 on hand. Other moneys came into the same fund, and warrants were paid out of the fund, but it is conceded that, at the time of the commencement of this action, the general balance exceeded $2,000. It does not appear that, prior to the appropriation of the money by the city, the plaintiff had ever sought to withdraw the check, or had intimated a purpose to dispute the validity of the ordinance, or the right of the town to collect the check and use its proceeds. But after it had been so appropriated, notice was given to the city by respondent, protesting against covering the money into the town treasury, and notifying the city that, in case such action was persisted in, suit would be brought to protect his rights.

On April 18, 1904, the council repealed the ordinance of March 3, 1903, granting said franchise. On May 17, of the same year, this action was commenced to recover $2,000 from the town, and the town officials were joined as defendants. On June 2, on application of the plaintiff, an order was made enjoining and restraining the defendants, until the further order of the court, from paying out or otherwise disposing of the sum of $2,000, being the proceeds of the check aforesaid, and from paying out, for any purpose, any money that would reduce the amount of money in the treasury of said town available for the return to plaintiff of the $2,000, the proceeds of said check. From this injunction this appeal is taken.

The substantial allegation of the complaint, upon which the injunction was granted, was that a certain connecting line was required, which, if constructed, would cross certain waterways, the same being public navigable tide waters, controlled by the government of the United States, known as the East Waterway and the West Waterway; that, at the time of the passage of said ordinance and the filing of said check, it was contemplated that the United States authorities would permit the construction or use of a trestle, with drawbridges of light construction and low cost, across said waterways, and such was the contemplation of both parties; but, after the passage of said ordinance, it was determined and made known by the United States authorities that they required the construction of two very large and extremely costly drawbridges, namely, one over each of said waterways, costing enormous sums, to wit, $175,000 each, and the cost of said drawbridges, if undertaken, together with other expenditures which would be required for the carrying out of said enterprise, including the construction of the line over the routes named in said ordinance, was in fact prohibitory; and it was asserted in the complaint that, by reason of these facts, the

failure of the plaintiff to construct, and put into operation, the line of railway, within said one year, was caused by accident and inability to obtain material, within the meaning of section 12 of said ordinance.

It is the contention of the appellants that the claim sued on was a claim such as should have been presented to the council for consideration, allowance, and audit, and that no presentation was alleged, and this is admitted by the respondent. It is also contended that, if respondent has any remedy against the city, it should be obtained through the medium of a straight action at law. It would seem to us that the averments of the complaint did not relieve the respondent from performing his contract, under the express provisions of section 12. It was for the contractor to put on foot inquiries concerning the cost of the construction of this road, and the bridges necessarily connected with it. The information which he now complains of, with reference to the action of the government, could no doubt have been obtained before, as well as after, the contract had been entered into. It is difficult to discuss the error alleged, however, without discussing the merits of the cause, as a discussion of the merits is indulged in by both appellants and respondent in their respective briefs.

But we are unable to discover any trust character in the check which was deposited for the benefit of the city, or any reason alleged in the complaint for the equitable interference of the court. There must be some force given to the provision in relation to the deposit and the forfeiture of the check. It was a provision for the protection of the city, agreed to by the respondent. The property in the check remained in the respondent until the year had expired. Then, if the conditions of the contract had been performed, it was to be returned to the grantee. If not, and no continuance were granted, it was to be forfeited to the city, and, if so, the property in it would certainly belong to the city. It seems to us that the contract was a

simple one, easily understood and easily complied with, and at the expiration of the year, in the absence of the continuance, either the respondent had a right to a return of the check, or the city had a right to appropriate it. Otherwise the contract in relation to the check amounted to nothing.

It is insisted by the respondent that, while it is doubtless true that the depositing of the check under the provisions of the ordinance was entirely voluntary, it was, however, no more a payment to the city than the deposit of collateral with a bank is a donation of the collateral to the bank, and a waiver of all right to hold the bank as trustee in case it attempts to misappropriate the collateral. But the parallel would be logically maintained only where the collaterals were deposited with an express contract that they should be forfeited to the use of the bank, in case the original debt were not paid at its maturity. The check, under the terms of the contract, had been cashed, and the money had already been appropriated by the city, and had become indiscriminately commingled with other money belonging to the city, so that the particular money itself could not in any event be traced or followed; and, therefore, there was nothing for an injunction to rightfully operate upon; and, if the city had wrongfully appropriated the money of the respondent, it was available to him to sue the city for moneys had and received. There is no fraud on the part of the city alleged. It was acting on what it deemed were its rights under the contract, and, if it misinterpreted that contract and misconceived its rights it is responsible to the respondent in an action at law.

The judgment is reversed, with instructions to deny the injunction asked for.